IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                    Case: 1:18-CR-02634 WJ-1

JOSHUA J. TINSLEY,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION

THIS MATTER comes before the Court upon Defendant Joshua Tinsley's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(i), filed November 2, 2020 (Doc. 84) (the "Motion"). Having reviewed the parties' briefings and the applicable law, the Court finds that the Motion fails, as Defendant has not established that extraordinary and compelling reasons warrant a sentence reduction consistent with applicable policy statements issued by the Sentencing Commission. *See* § 3582(c)(1)(A)(i). Accordingly, the Motion is **DENIED**.

### BACKGROUND

On May 30, 2018, DEA agents confiscated Defendant's backpack on a Greyhound bus and carried the backpack to the DEA Albuquerque District Office, where a narcotics canine indicated illegal narcotic contents. Doc. 1 at 2-3. A search of the bag revealed a distribution amount of methamphetamine. *Id*. at 3. Defendant was later taken into custody on August 10, 2018 while riding on another Greyhound bus, and on August 14, he was indicted under 21 USC §§ 841(A)(1) and (B)(1)(a) for possession with intent to distribute more than 500 grams of methamphetamine.

Doc. 78 at 1. On August 15, Defendant pled guilty and accepted a ten-year sentence under Fed. R. Crim. P. 11(c)(1)(C). *Id*. at 2.

Defendant now motions for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that he suffers from sleep apnea and one of his girlfriend's children suffers from bone degeneration. Doc. 84 at 1; Doc. 87 at 8.

## DISCUSSION

"Generally, a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)). However, Congress has provided a limited exception to this rule and allowed for certain "compassionate release" sentence modifications under § 3582(c)(1)(A). Before the First Step Act of 2018 was enacted, only the Bureau of Prisons ("BOP") could seek compassionate release. First Step Act of 2018, Pub. Law 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). As amended, § 3582(c)(1)(A)(i) now permits a court to consider a compassionate release motion filed by a defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"

Based on the documents and handwritten dates attached to Defendant's Motion, Defendant submitted his request for release to his prison facility through his case manager on August 28, 2020. Doc. 84 at 6. On that same day, the facility responded that the institution staff were prioritizing review for inmates who qualify for release to home confinement, and that if Defendant met their criteria, he would be notified. *Id*. at 7. On September 2, 2020, Defendant submitted "additional facts" to support his request for release to his case manager. *Id*. There is no indication as to whether the case manager forwarded the second submission to the prison, but Defendant

claims to have exhausted his administrative remedies for compassionate release. Doc. 87 at 3. It is unclear from the record whether Defendant has truly exhausted his administrative remedies, as page 7 of Defendant's Motion seems to be a denial of the initial request from the prison itself. Doc. 84 at 7. However, Defendant's Motion fails on other grounds, so it is not necessary for the Court to require further documentation concerning exhaustion at this time.

### I.     COVID-19

Now the Court turns to the substantive requirements of § 3582(c), which charge the Court with determining whether "extraordinary and compelling reasons . . . consistent with applicable policy statements issued by the Sentencing Commission" justify the reduction that Defendant seeks. § 3582(c)(1)(A). Defendant contends that his sleep apnea is an "extraordinary and compelling reason" under the statute because breathing conditions may exacerbate the symptoms of COVID-19 if the virus is contracted. This argument, however, runs afoul of the plain language of the policy statement set forth by the Sentencing Commission. *See* USSG § 1B1.13, cmt. n.1(A). It similarly fails under the Court's analysis of Defendant's condition as it applies to the catch-all policy statement set forth in § 1B1.13, cmt. n.1(D).

Specifically, § 1B1.13, cmt. n.1. holds that "extraordinary and compelling reasons" include certain categories of "serious physical or medical conditions" which "substantially diminish[] the ability of [a] defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018). It is important to note that the applicable provision is written in the present tense: "The defendant *is* suffering" from a condition "that substantially *diminishes*" his ability to provide self-care. § 1B1.13, cmt. n.1(A)(ii). Here, however, Defendant bases his request on the speculative claim that

*if* he were to contract COVID-19, he may have a persistent inability to provide self-care. Therefore, because Defendant's sleep apnea has not hindered his self-care capabilities absent a COVID-19 infection, the Court would have to come to the absurd conclusion that Defendant's ability to provide self-care has been diminished as a mere result of the anxiety that COVID-19 may affect him unusually in order to grant his request pursuant to § 1B1.13, cmt. n.1(A). *See United States v. Young*, 2020 U.S. Dist. LEXIS 202543, at *12 (D. Kan. 2020) (finding that subsection (A) of § 1B1.13 did not apply because the defendant with health conditions would potentially not be hindered in his ability to provide self-care "unless and until" he contracts COVID-19). Furthermore, Defendant has offered no documentation to support a diagnosis of sleep apnea, and the Court is not convinced that sleep apnea is a "serious" condition under § 1B1.13's commentary.

Under the catch-all provision of § 1B1.13, Defendant's argument similarly fails. § 1B1.13, cmt. n.1(D) states that release may be appropriate based on "other reasons," that is, "extraordinary and compelling reason[s]" either by themselves or in combination with a defendant's medical condition. Formerly, only the Bureau of Prisons (the "BOP") could file motions for compassionate release, and so § 1B1.13, cmt. n.1(D) states that a determination as to "other reasons" is to be made specifically by the Director of the BOP. § 1B1.13, cmt. n.1(D); *see Young*, 2020 U.S. Dist. LEXIS 202543, at *13. However, following the First Step Act,[1] the Tenth Circuit implicitly acknowledged that courts were authorized to make a determination under § 1B1.13, cmt. n.1(D). *See United States v. Saldana*, 807 Fed. Appx. 816, 819-20 (10th Cir. 2020). And courts may, independent of the BOP, make determinations as to whether a defendant has established other extraordinary and compelling reasons to justify sentence reduction beyond those articulated in § 1B1.13 commentary

---

[1] Enacted in December of 2018, the First Step Act authorized defendants to file motions for compassionate release in addition to the BOP. The First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194; *see United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020) (acknowledging that the First Step Act shifted discretionary authority away from the BOP).

4

(A) through (C). *See* § 1B1.13, cmt. n.1(D); *see also* 28 U.S.C. § 994(t) (the Sentencing Commission may define "extraordinary and compelling" reasons, including examples and the criteria to apply in doing so).

Accordingly, the Court has discretion, where Defendant's Motion fails under § 1B1.13, cmt. n.1(A), to make its own determination as to whether § 1B1.13, cmt. n.1(D) is met. Upon review of Defendant's Motion, the foundation of which is Defendant's alleged sleep apnea and the speculative risk posed to Defendant by COVID-19, the Court does not find an "extraordinary and compelling" justification for release under § 3582(c)(1)(A),[2] particularly when Defendant does not allege that the prison facility is presently struggling with higher than usual COVID-19 infections. With regard to Defendant's claim that his girlfriend's child is suffering from a bone disorder, Defendant has failed to show that the girlfriend is a "spouse or registered partner," that the girlfriend is unable to care for her child, and that Defendant is the only viable option to care for the child. *See* § 1B1.13 cmt. n.1(C) (Defendant must show death or incapacitation of the minor child's caregiver, or the incapacitation of a spouse or registered partner and that Defendant is the only available caregiver for said spouse/partner); *see also United States v. Delgado-Montoya*, 2020

---

[2] For cases in which medical conditions, even medical conditions claimed by the CDC to augment the symptoms of COVID-19, have been deemed neither extraordinary nor compelling, see *United States v. Baca*, 2020 WL 5369078 (D.N.M. 2020) (finding that hepatitis C was not extraordinary or compelling, though the CDC declared that anyone with underlying condition, including liver disease, "might be at a higher risk of illness from COVID-19," and effectively that "every disease and disorder could magnify COVID-19's effects.") (J. Browning); *United States v. Gaskin*, 2020 WL 6799014 (D.N.M. 2020) (finding that a defendant with diabetes and hypertension did not have extraordinary or compelling justification for release because his fears were speculative and there was no outbreak of COVID-19 at his facility) (K. Riggs); *United States v. Olsson*, 2020 WL 6869979 (N.M.D. 2020) (finding that defendant with chronic kidney disease, heart failure, diabetes and hypertension did not demonstrate extraordinary and compelling circumstances) (K. Riggs); *United States v. Delgado-Montoya*, 2020 WL 4934308 (D.N.M. 2020) (finding that defendant's COVID-19 risk factors were insufficient to establish extraordinary or compelling justification for release because, though the risk factors were present, Defendant's illness absent an infection of COVID-19 had been managed at the prison facility) (K. Gonzales). The Court is aware that some courts throughout the United States have chosen to release inmates due, in part, to COVID-19, but here, Defendant merely theorizes that the so-called "second wave" of COVID-19 will infect the prison, not that the prison is presently subject to unusual infections rates. Additionally, Defendant has only served a small portion of his sentence. *See United States v. Rodarmel*, 2020 WL 2840059, at *2 (D. Kan. 2020) (noting that many cases in which a court granted compassionate release on the partial grounds of COVID-19 involved "defendants [which] had an extremely short term (five months or less) left on their sentences[.]").

WL 4934308, at *11 (D.N.M. 2020) (denying compassionate release when Defendant's daughter needed care because Defendant failed to explore reasonable options or evidence that someone else was unable to care for the daughter). The Court is likewise unconvinced that the child's alleged bone disorder is compelling given the circumstances, as Defendant failed to show a concern for this child while engaging in a litany of offenses throughout the child's lifetime, offenses which ultimately resulted in lengthy confinement.

## II.    Danger to the Community and the § 3553(a) Factors

To justify the type of compassionate release that Defendant seeks, the Court must also determine that the Defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g).[3] USSG § 1B1.13(2). The Court must also consider the following factors set forth in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence[s] and the sentencing range established for [the offense] . . . (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

### (a) Criminal History

Defendant would likely pose a danger to the community if released. Defendant's extensive criminal history reveals a near constant record of unlawfulness spanning from 2006 to the time of his conviction for the instant offense. In 2006, Defendant was convicted of drug possession and driving a vehicle while intoxicated. Doc. 74 at 9-10. In 2007, Defendant was convicted of

---

[3] While § 3142(g) governs release *pending trial*, USSG § 1B1.13 requires the Court to apply the public danger provision of § 3142(g) to considerations of release post-conviction. *See* § 1B1.13(2).

possessing a controlled dangerous substance while carrying an illegal weapon. *Id*. at 11. In 2009, Defendant was convicted of disturbing the peace and possessing a controlled substance. *Id*. at 11-12. In 2010, Defendant was convicted of possession of more than 2 oz. of marijuana. *Id*. at 12. In 2011, Defendant was convicted of possessing drug paraphernalia. *Id*. at 13. In 2012, and again in 2013, Defendant was convicted of possessing with intent to distribute a controlled substance. *Id*. In 2014, Defendant was convicted of possessing a controlled substance. *Id*. at 14.

While the Defendant's prior convictions are largely non-violent, the extent of his criminal history is indicative of a patent lack of regard for his community and for the law. The Court is not convinced that Defendant would abide by any conditions imposed upon his release if such release was granted, nor that Defendant would change his behavior after this brief stint of confinement.[4] The Court acknowledges that in October of 2018, it set aside Magistrate Judge Molzen's Detention Order (Doc. 10). However, this was because the law favors granting pretrial release when conditions may limit a Defendant's potential threat to the community based on the constitutionally fundamental presumption of innocence. The standards are different here. Once convicted, a presumption of innocence no longer weighs on statutory applicability, and the language of § 3582(c)(1)(A) *restricts* a court's ability to modify a defendant's imposed sentence. Specifically, § 3582(c)(1)(A) requires any sentence reduction to be consistent with the applicable policy statements issued by the Sentencing Commission. The applicable policy statement, § 1B1.13(2), requires a court to determine that "the defendant is not a danger to the safety of any other person or to the community" prior to determining the propriety of early release. It is not the case at this stage that the Court must grant release unless it is shown by clear and convincing evidence that no

---

[4] Defendant has been imprisoned on several occasions with sentences totaling approximately one year, not including his present confinement. Doc. 74 at 11- 14. He has also had several other sentences suspended, and has been on probation for over seven years. *Id*.

7

conditions would reasonably mitigate the Defendant's potential danger to the community, but rather, the Court *may not* grant release unless it makes an individual determination that Defendant is not a danger to the community. There may not have been enough "clear and convincing" evidence to negate the statutory default of release prior to trial when the Court set aside Judge Molzen's order in 2018, but similarly, there is not enough evidence now for the Court conclude that the Defendant does *not* pose a danger to the community under § 1B1.13(2).

### (b) Deterrent Policy, the Seriousness of the Offense, and the Sentencing Range

A balancing of the § 3553(a) factors also cautions against a sentence reduction; namely, (i) to afford adequate deterrence to criminal conduct, the need for the sentence imposed to reflect the seriousness of the offense, and to promote respect for the law; and (ii) the kind of sentence and the sentencing range established for the offense. *See* § 3553(a)(2-4).

The Defendant accepted a very generous plea agreement. The Presentence Investigation Report (the "PSR") calculated a guidelines imprisonment range of 324 to 405 months (27 to ~34 years).[5] Doc. 74 at 20. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), Defendant was offered and accepted a sentence of 120 months (10 years). *Id*. at 20-21. Of this sentence, Defendant has served only 16 months since he pled guilty in August of 2019. Doc. 69. Accordingly, the Court finds that Defendant, by way of his plea agreement, has already reduced his sentence exposure significantly, and that any additional reduction, particularly a sentence reduction of more than 85%, would substantially undermine the deterrent effects of imprisonment to criminal conduct under §

---

[5] Defendant objected to this calculation, citing racism in the Louisiana legal system as it related to his prior convictions, as well as an unfair determination that he qualified for an Aggravating Role assessment under USSG §3B1.1(c). Addendum to the Presentence Report, Doc. 80 at 1-2. U.S. Probation Services investigated Defendant's objections and obtained records from the Baton Rouge City Court, then determined that Defendant's claims were meritless and that Defendant's assessments set forth in the PSR would not be changed. *Id*. at 2.

3553(a)(2), as well the need for the sentence to reflect the seriousness of Defendant's offense and the need to promote respect for the law. For these reasons, Defendant's Motion is denied.

## CONCLUSION

Defendant fails to satisfy the requirements of 18 U.S.C. § 3142(g), as the Court cannot conclude that he does not pose a danger to the community, and the factors set forth in 18 U.S.C. § 3553(a) strongly caution against Defendant's release. Moreover, Defendant has failed to evidence any "extraordinary and compelling" reasons under § 3582(c)(1)(A) to justify a reduction in his sentence, as he only articulates a speculative fear of COVID-19 and has not demonstrated that his conditions presently diminish his ability to provide self-care under the applicable policy statement of USSG § 1B1.13. Accordingly, Defendant's compassionate release Motion for Sentence Reduction is hereby **DENIED**. Defendant's concurrently pending Motion to Appoint Counsel and Amended Motion to Appoint Counsel will be addressed in a subsequent order from the Court.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE