IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.   No. 18-CR-2634 WJ

JOSHUA JAMES TINSLEY,

    Defendant.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO RECONSIDER § 3582(c)(1)(A) SENTENCE REDUCTION

**THIS MATTER** is before the Court upon Defendant Joshua Tinsley's *pro se* Motion to Reconsider, filed March 16, 2021 (Doc. 96) (the "Motion"). Defendant asks the Court to reconsider its determination that the merits of Defendant's *pro se* motion for compassionate release did not warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). The Court finds that the Motion is not well-taken and is therefore **DENIED**.

### BACKGROUND

On May 30, 2018, DEA agents confiscated Defendant's backpack on a Greyhound bus and carried the backpack to the DEA Albuquerque District Office, where a narcotics canine indicated illegal narcotic contents. Doc. 1 at 2-3. A search of the bag revealed a distribution amount of methamphetamine. *Id*. at 3. Defendant was later taken into custody on August 10, 2018 while riding on another Greyhound bus, and on August 14, he was indicted under 21 USC §§ 841(A)(1) and (B)(1)(a) for possession with intent to distribute more than 500 grams of methamphetamine. Doc. 78 at 1. On August 15, Defendant pled guilty and accepted a ten-year sentence under Fed. R. Crim. P. 11(c)(1)(C). *Id*. at 2.

1

On November 2, 2020, Defendant motioned the Court for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that he suffers from sleep apnea and one of his girlfriend's children suffers from bone degeneration. Doc. 84 at 1; Doc. 87 at 8. The Court denied the Motion, finding that Defendant failed to satisfy the requirements of § 3142(g) because the Court could not conclude that he did not pose a danger to the community and the factors set forth in 18 U.S.C. § 3553(a) strongly cautioned against his release. On March 16, 2021, Defendant filed the subject Motion, contending again that his sleep apnea and his girlfriend's child's health constitute "extraordinary and compelling reasons."

## Legal Standards

The Federal Rules of Criminal Procedure do not expressly provide for a motion to reconsider. Even so, in the criminal context, courts ordinarily apply the same standards that apply in civil cases. *See United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). The Court has discretion to reconsider a decision if the moving party can establish (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion to reconsider is not a second opportunity for the losing party to make his strongest case, to rehash arguments or to dress up arguments that previously failed. *See Christy*, 739 F.3d at 539.

The standard imposed by *Servants of Paraclete* is a demanding one, and Defendant must properly establish that his request for reconsideration falls within one of the three categories listed above. However, as a *pro se* litigant, justice requires this Court to liberally construe his allegations and excuse instances of inartful drafting. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**Discussion**

### I.     The First Category

The Court will begin by examining the first *Servants of Paraclete* category, "an intervening change in the controlling law." 204 F.3d at 1012. The Court denied Defendant's motion for compassionate release based on 18 U.S.C. § 3582(c)(1)(A), which states that upon review of a defendant's motion for compassionate release, a court may modify a term of imprisonment only if, after considering the factors set forth in 18 U.S.C. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The "consistent with applicable policy statements" requirement has been interpreted by many courts to mean that a defendant's circumstances must fit within the framework of U.S.S.G. § 1B1.13 as it is the applicable policy statement issued by the Sentencing Commission. *See, e.g., United States v. Funez*, 2021 WL 168447, at *2 (D. Colo. Jan. 19, 2021); *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019); *see also* 28 U.S.C. § 994(a)(2)(C) (Congress directed the Commission to promulgate "general policy statements regarding … the appropriate use of … the sentence modification provisions set forth in [section] 3582(c) of title 18 …").

However, there is a growing number of court opinions concluding that the First Step Act rendered § 1B1.13 inapplicable to defendant-initiated requests for compassionate release. *See United States v. Maumau*, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020). On September 25, 2020, the Second Circuit issued the *United States v. Brooker* opinion and became the first appellate court to hold that the First Step Act freed district courts to exercise their discretion in determining what constitute extraordinary circumstances. 976 F.3d 228, 234. Other circuits have agreed with the reasoning contained in the *Brooker* opinion and issued similar holdings. *See United States v.*

*Jones*, 980 F.3d 1098, 1108 (6th Cir. Nov. 20, 2020) (holding that § 1B1.13 does not apply to cases where an imprisoned person files a motion for compassionate release); *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. Nov. 20, 2020) (determining that there is no current "applicable" policy statement covering prisoner-initiated applications for compassionate release); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. Dec. 2, 2020) (district courts are "empowered ... to consider any extraordinary and compelling reason for release that a defendant might raise.") (quoting *Brooker*, 976 F.3d at 230). The Tenth Circuit has recently adopted this position, finding:

> Until the Sentencing Commission updates its guidance, there is no "applicable policy statement," 18 U.S.C. §3582(c)(1)(A)(i), that constrains the district court's discretion to consider whether a defendant-filed motion satisfies the extraordinary and compelling" standard.

*United States v. Maumau*, No. 20-4056, 2021 WL 1217855, at *7 (10th Cir. Apr. 1, 2021). The holding essentially signals federal courts to use discretion in deciding whether "extraordinary and compelling" reasons exist for granting compassionate release. *Id.* (while the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i)).

Though the Sentencing Commission's policy statements are no longer considered bound to the "extraordinary or compelling" inquiry under *Maumau,* there is nothing preventing the Court from using these policies as guidelines in exercising its discretion. This Court has used them in formulating opinions in the past and finds that they continue to provide reasonable standards which are probative of the issues being considered. Indeed, since the passage of the First Step Act, other courts have conducted independent assessments of whether "extraordinary and compelling"

reasons exist while turning to the policy statements for guidance.[1] Until such time as the Sentencing Commission updates its guidance to conform to First Step Act Amendments, this Court will continue to be informed by the policy statements while conducting its own independent analysis. *See United States v. Jenkins*, 460 F. Supp. 3d 1121, 1128 (D. Colo. 2020) (court noting that its conclusions "are consistent with the Sentencing Commission's views but independently assess whether [defendant] has presented extraordinary and compelling reasons").

Thus, though applicable law has changed, this change does not materially affect the Court's disposition on Defendant's Motion for Compassionate Release. Using the policy statements as a loose guide for the Court's independent assessment as to Defendant's eligibility for release, the Court still finds that Defendant is an inappropriate candidate, particularly since the Court's previous holding was based, in large part, on § 3553(a), which is unaffected by the holding in *Maumau* and also strongly cautions against Defendant's release. The Court therefore finds that the recent change in law as to motions for compassionate release does not suffice to justify reconsideration under *Servants of Paraclete*.

---

[1] *See, e.g., United States v. Fox*, 2019 WL 3046086, at *2–3 (D. Me. July 11, 2019) ("I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change."); *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (relying on the policy statement to resolve petitioner's appeal); *United States v. Jenkins*, 460 F. Supp. 3d 1121, 1128 (D. Colo. 2020) (joining majority of other district courts that have addressed this issue in concluding that it has the discretion to provide a defendant with relief, "even if his situation does not directly fall within the Sentencing Commission's current policy statement" but conducting independent assessment of existence of "extraordinary and compelling reasons" that were consistent with the policy); *United States v. Brooker*, 976 F.3d 228, 233–34 (2d Cir. 2020) (joining majority that has concluded that the First Step Act freed district courts to exercise their discretion in determining what are "extraordinary and compelling" reasons); *United States v. Pinson*, 835 F. App'x 390, 394 (10th Cir. 2020) (even if policy statement no longer binds federal courts, courts "have continued to refer to it in deciding challenges related to §3852(c)(1)"); *United States v. Edington*, No. 19-CR-00174-REB-1, 2020 WL 2744140, at *2 (D. Colo. May 27, 2020) (citing cases holding that district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it, using policy statements only as guidelines); *United States v. Gheith*, 2020 WL 5850162, at *4 (2020) (policy statements are "instructive" to court's independent assessment of whether there are "extraordinary and compelling reasons" that warrant a sentence reduction even though they have not been amended to reflect the statutory changes brought about by the First Step Act").

## II. The Second Category

The Court now turns to the second *Servants of Paraclete* category—the availability of new evidence that could not have been obtained previously through the exercise of due diligence. *Servants of Paraclete*, 204 F.3d at 1012. The new evidence submitted by Defendant is nearly 100 pages of medical records allegedly confirming a diagnosis of sleep apnea.

The Court acknowledges Defendant's claim that he spent a significant amount of time attempting to obtain these medical records, and that they were not available to him at the time of the filing of the initial Motion for Compassionate Release. However, these medical records, which provide a provisional diagnosis of sleep apnea based on Defendant's complaints in late 2020, do not constitute "new evidence" sufficient to undermine the Court's previous findings.

As the Court stated, the reasoning for the denial of the Motion for Compassionate Release was that Defendant failed to demonstrate that sleep apnea *presently* hinders his ability to provide self-care. Though this requirement is derived from § 1B1.13, cmt. n.1, which is not binding on this Court's analysis, it is nonetheless important to distinguish present hindrances to self-care and possible ones. Otherwise, the Court may grant motions for compassionate release based on any set of creative, speculative risks an inmate claims to face in light of COVID-19.

Defendant's brief provides very little on how his sleep apnea impacts his ability to provide self-care while imprisoned. Defendant explains how it affects his sleeping, but does not demonstrate any substantial need for release beyond speculative claims that if he catches COVID-19, he may be at a higher risk than other prisoners without sleep apnea. This does nothing to resolve the issues set forth in the Court' denial of Defendant's request for compassionate release, nor does it undermine the Court's determination that, regardless of his condition, Defendant is not suitable for release because he poses a danger to the community and fails the factors set forth in § 3553(a).

6

Defendant is therefore, even in light of this evidence, in the same position as when he requested compassionate release before, and the Court finds that the new medical records do not establish a basis for the Court to reconsider its prior decisions.

### III. The Third Category

Finally, the Court addresses the third *Servants of Paraclete* category, "the need to correct clear error or prevent manifest injustice." 204 F.3d at 1012. Defendant alleges four "errors" which he appears to believe warrant reconsideration: (1) "[t]he Court's assessment that [D]efendant has no concern for his child's life because he has committed offenses throughout the child's lifetime," Doc. 96 at 7, (2) the Court's determination as to Defendant's legal marital status, (3) the Court's determination as to "extraordinary and compelling circumstances" in light of COVID-19 cases at his prison, and (4) the Court's § 3553(a) analysis.

As to the first, Defendant states that the Court's assessment that Defendant "has no concern for his child" because he committed offenses throughout his child's life is "in error" because, "using this Court's rationale[,] no one in the United States military has concern for their children" because "members of this country's armed forces commit to being away from their families for long periods of time[] and commit the most egregious acts a being can commit, murders." Doc 96 at 7-8. This confused proclamation is no basis for reconsideration, and does not represent "error" or "manifest injustice" in any sense. The Court takes strong exception to the manner in which Defendant has mischaracterized the Court's prior ruling. The Court notes that it never stated Defendant had "no concern" for the child. Rather, the Court stated that the alleged bone disorder of the child did not support Defendant's release for two reasons: (1) the Defendant did not *show* a concern for the child *while* Defendant was engaging in a litany of criminal offenses (which any reasonable person knows carry certain risks of being imprisoned and removed from the child), and

7

(2) the Defendant is neither the biological nor adoptive father of the child.[2] The Court understands the Defendant's girlfriend to be the mother of the child and while Defendant may consider his relationship with the child to be close, there is nothing in the record to show that Defendant possesses a legally relevant relationship[3] with the child.

This brings the Court to Defendant's second alleged "error," the finding that because Defendant and his girlfriend are not married, there is no extraordinary circumstance under § 1B1.13 cmt. n.1(C) (Defendant must show death or incapacitation of the minor child's caregiver, or the incapacitation of a spouse or registered partner and that Defendant is the only available caregiver for said spouse/partner). Again, due to the Tenth Circuit's recent opinion in *Maumau*, the policy notes of § 1B1.13 are not binding on the Court. However, the Court will continue to use them as guidance, and this requirement is no exception because it creates sensible barriers for compassionate release requests based on questionable claims or relationships, and the language is simply not applicable to Defendant.

This is not to say that Defendant does not care for the child, nor that the Court is not sympathetic towards the child's bone disorder. This is to say, however, that compassionate release is an "extraordinary" remedy, and only "extraordinary" situations should warrant such remedy and those "extraordinary" situations are not present here.

Third, Defendant alleges in his *pro se* Motion that the Court erred because FCI Yazoo City Medium ("FCI Yazoo") struggles with higher than usual COVID-19 infections, both at the time of his Motion for Compassionate Release and now. First, this is irrelevant to his Motion—the Court's reasoning was not based on the number of COVID-19 infections at the time of filing; it

---

[2] Defendant has informed the U.S. Probation Office that he has a relationship with his "long-time girlfriend" and her children. *See* Doc. 12 at 2, ¶ 3; Doc. 17 at 2; Doc. 74 at 17.
[3] Examples of a legally relevant relationship would include biological or adoptive parent or a legal guardian.

was based on other factors that preclude compassionate release, namely those set forth § 3553(a). Accordingly, Plaintiff identifies no "clear error" or "manifest injustice," and reconsideration is inappropriate. Furthermore, Defendant alleges that "currently another outbreak of COVID-19 has begun to spread at FCI Yazoo," which appears false. Defendant is yet to define what he believes an "outbreak" to be, but according to the Bureau of Prisons ("BOP") website, FCI Yazoo has zero inmate cases of COVID-19, and only 6 staff cases. COVID-19 Cases, Bureau of Prisons (https://www.bop.gov/coronavirus/#:-:text=COVID%2D79YoZOCases,L4YoZC32 SYo2OinYoZOcommunity%2Dbased%2Ofacilities.&text=CurrentlyYoZCYo2OTSYoZClTg/o2 0inmates%20and%2OL%2C3OT,attributed%20t%20oYoZOCOYtDYo2DLg%20disease)  (last accessed April 12, 2021).  In fact, according to the website, only 245 out of 126,061 BOP inmates have COVID-19 in the whole country. Furthermore, while any death is tragic, a relatively low number of BOP inmates throughout the United States, 230, have died of COVID-19 since its inception in the United States over a year ago. *Id*.

Defendant's fourth allegation of error is that the Court does not put Defendant's past crimes "into the proper context." Doc. 96 at 9. Defendant specifically contends that he was never convicted of carrying an illegal weapon, and takes issue with the Court's finding that his convictions were "largely non-violent." Doc. 91 at 7. Defendant believes they are "wholly non-violent." Doc. 96 at 9. Defendant also alleges that the Court improperly calculated his past-terms of imprisonment and unfairly referred to his present imprisonment as a "brief stint" of confinement. Doc. 91 at 7. Defendant maintains that "no term of imprisonment is a 'short stint' because people should not be locked in cages." Doc. 96 at 9.

These arguments have no merit and do not bear on a motion to reconsider. The Court's reference to Defendant's "largely non-violent" history was very much a courtesy, and was made

9

as part of the Court's conclusion that the first § 3553 factor actually weighed in Defendant's favor. The PSR sets forth a sentence of 2-year supervised probation for "Illegal Carrying of a Weapon with Controlled Dangerous Substance," but Defendant is correct that in the description of the event, the PSR notes that the weapon-related portion of the charge was dismissed. *See* Doc. 74 at 11.

Defendant's allegation that the Court's calculation of his prison time is incorrect is not clear in the record, and more importantly, does not relate to the Court's earlier reasoning nor bear on the Motion. The Court found that Defendant's previous sentences totaled "approximately one year." This is true whether or not some of those sentences were reduced or served concurrently resulting in 8 months of detention served, as Defendant alleges. What *was* important to the Court's analysis was Defendant's clear history of unlawfulness based on the number of offenses Defendant has committed, a number thoroughly confirmed in the PSR. Another important factor considered by the Court was the need "to afford adequate deterrence to criminal conduct, the need for the sentence imposed to reflect the seriousness of the offense, and to promote respect for the law." Doc. 91 at 8 (citing § 3553(a)). The Court notes that Defendant accepted a very generous plea agreement, 10 years, of which Defendant had served only 16 months with 10 months of pretrial detention at the time of his motion to reconsider. Defendant may disagree that this is a "brief stint," but he has already reduced his sentence exposure from 27 to 30 years down to 10 years, and any additional reduction would substantially undermine the deterrent effects of imprisonment to criminal conduct under § 3553(a)(2). Under these circumstances, the Court finds no error or manifest injustice to cure through reconsideration of its prior decisions denying compassionate release.

## Conclusion

Having considered Defendant's updated legal arguments and recent changes to applicable law and having examined the record for signs of manifest injustice, the Court finds that Defendant has not established the conditions necessary for reconsideration. For the reasons stated in this Memorandum Opinion and Order, the Court therefore **DENIES** the Motion.

Because the Motion has been denied on the merits in this Memorandum Opinion and Order, there is no need in granting Defendant's pending Motion to Appoint Counsel on the issue. Defendant's Motion to Appoint Counsel (Doc. 97) is therefore **DENIED**.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE