**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. 18-cr-02634-WJ

JOSHUA TINSLEY,

Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

THIS MATTER is before the Court on the Motion to Dismiss FRCP Rule 12(h)(3) **[Doc. 149]** and Motion to Enter Order and Judgment **[Doc. 154]** filed pro se by Defendant Joshua Tinsley**.**

Before the Court are the Defendant's Motion to Dismiss **[Doc. 149]**, Defendant's Memorandum in Support of Motion to Dismiss **[Doc. 151]**, and the United States' Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction **[Doc. 153]**. The Defendant's Motion to Dismiss and Motion to Enter Judgment are wholly lacking in merit and are frivolous. Therefore, the Court will deny the Motions.

**Factual and Procedural Background**

Defendant Joshua Tinsley was travelling from Los Angeles California on a Greyhound bus on May 30, 2018. When the bus stopped at the bus station in Albuquerque, New Mexico, Defendant got off with a backpack containing approximately 6, 758 grams of methamphetamine. **[Doc. 1; Doc. 7; Doc. 71]**. Defendant was approached by law enforcement officers who asked Defendant if they could search the backpack. When Defendant refused consent, the backpack was

detained by the officers, a canine search was conducted, and the methamphetamine was subsequently discovered. **[Doc 1; Doc. 7; Doc. 71]**.

On August 14, 2018, Defendant Tinsley was indicted on one count of possession with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). **[Doc. 7]**. Defendant entered into a Rule 11(c)(1)(C) plea agreement, pleading guilty to the one count of possession with intent to distribute methamphetamine. **[Doc. 71]**. Defendant was then sentenced to a term of imprisonment of 120 months. **[Doc. 83]**.

Defendant filed his Motion to Dismiss **[Doc. 149]** and a Memorandum in Support of Motion to Dismiss **[Doc. 151]**. The United States then filed its Response in opposition to the Motion to Dismiss. **[Doc. 153]**. Rather than filing a reply, Defendant filed a Motion to Enter Order and Judgment **[Doc. 154]** and Final Notice for Dismissal Action **[Doc. 155]**.

## ANALYSIS

### 1. Defendant Cannot Proceed Under Federal Rule of Civil Procedure 12(h)(3).

As an initial matter, Defendant Tinsley files his Motions "pursuant to Federal Rules of Civil Procedure Rule 12(h)(3)." **[Doc. 141 at 1]**. However, this is a criminal case, not a civil proceeding. Therefore, the Federal Rules of Civil Procedure have no application to the case. *See* Fed. R. Civ. P. 1. The Court could end its analysis at this point but, because Defendant Tinsley is pro se, the Court will reluctantly consider his Motions to have been made under Fed. R. Crim. P. 12(b)(2).

### 2. Defendant's Commerce Clause Challenge is Without Legal Merit and Frivolous.

Defendant Tinsley's Motions proceed largely on a theory that Congress lacks authority under the Commerce Clause to criminalize possession of illegal substances in interstate commerce and, therefore, his conviction and sentence were entered without subject matter jurisdiction and

must be dismissed. **[Doc. 149; Doc. 154]**. Tinsley also contends that, because the criminal activity took place in the parking lot of the Greyhound bus station, which is not owned by or ceded to the United States, there is similarly a lack of jurisdiction. **[Doc. 149 at 4-5]**.[1]

The Commerce Clause of the U.S. Constitution grants Congress the power "[t]o regulate [c]ommerce with foreign [n]ations, and among the several [s]tates, and with the Indian [t]ribes." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause specifically grants Congress the power to regulate "[c]ommerce . . . among the several [s]tates" through what is known as the Interstate Commerce Clause. Under the Interstate Commerce Clause, a statute is within Congress's power when Congress has "a rational basis . . . for concluding that a regulated activity sufficiently [affects] interstate commerce." *United States v. Lopez*, 514 U.S. 549, 557 (1995); *Gonzales v. Raich*, 545 U.S. 1, 22 (2005).

"Consistent with" that principle, the Supreme Court has outlined three categories of activity Congress possesses the power to regulate: "the use of the channels of interstate commerce," "the instrumentalities of interstate commerce, or persons or things in interstate commerce," and "those activities having a substantial relation to interstate commerce." *Lopez*, 514 U.S. at 558–59. As recognized by federal precedent, Congress's power to regulate "activities having a substantial relation to interstate commerce" is broad. See, *United States v. Humphrey*, 845 F.3d 1320, 1324 (10th Cir. 2017). That authority encompasses two powers: one, the power to regulate intrastate activities that in the aggregate substantially affect commerce, and two, the "authority to regulate intrastate conduct when failing to do so would 'substantially undercut' Congress'[s] attempt to

[1] Defendant Tinsley also suggests that his counsel was ineffective for not raising the interstate commerce arguments. However, the Court agrees with the United States that his allegations do not actually articulate an ineffective assistance of counsel claim **[Doc. 153 at 5-6]** and, therefore, the Court does not further address his suggestion of ineffective assistance.

regulate the relevant interstate market." *United States v. Humphrey*, 845 F.3d at 1324 (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 561 (2012)).

To determine whether an activity has a "substantial relation to interstate commerce," the Supreme Court has focused on several factors, including whether the activity is economic or commercial in nature; whether there is a jurisdictional element in the statute cabining its reach to interstate commerce; any congressional findings illuminating whether an activity substantially affects interstate commerce; and the attenuation of the link between the activity and interstate commerce. *See United States v. Morrison*, 529 U.S. 598, 610–12 (2000); *United States v. Patton*, 451 F.3d 615, 623 (10th Cir. 2006). The Court is to consider the factors holistically, *see United States v. Durham*, 902 F.3d 1180, 1215 n.23 (10th Cir. 2018), and is guided by the Supreme Court's analysis in *Gonzales v. Raich*, 545 U.S. 1 (2005).

In *Raich*, the Court held that even where an intrastate activity is not "commercial," Congress may regulate it "if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Raich*, 545 U.S. at 18; see also *People for Ethical Treatment of Prop. Owners v. U.S. Fish & Wildlife Serv. (PETPO)*, 852 F.3d 990, 1007 (10th Cir. 2017) (rejecting Commerce Clause challenge because "piecemeal excision of purely intrastate species would severely undercut the [regulatory scheme's] conservation purposes").

*Raich* defines permissible regulation on noncommercial intrastate activity. In *Raich*, the Court determined that prohibiting homegrown marijuana possessed for personal use was an essential part of a larger regulatory scheme aimed at curtailing the illicit interstate marijuana market; without the prohibition, that permissible goal would be frustrated as "high demand" could draw homegrown "marijuana into [the interstate] market." 545 U.S. at 19; *see, also, United States*

*v. Genao,* 79 F.3d 1333, 1336 (2nd Cir. 1996) (narcotics trafficking represents a type of activity that substantially affects interstate commerce). The Court has no problem concluding that based on *Raich,* Congress clearly has authority under the Interstate Commerce Clause to criminalize the conduct in this case and that federal jurisdiction was present over the Greyhound Bus parking lot where the criminal activity occurred. The Court, without question, had subject matter jurisdiction over the charges, indictment, conviction by plea agreement, and sentence in this case, and Defendant's Motions will be denied.

## CONCLUSION

Based on U.S. Supreme Court precedent, the Court does not hesitate to find that Congress has the power to regulate and criminalize the possession and transportation of methamphetamine in interstate commerce. Therefore, the Court denies the Motion to Dismiss **[Doc. 149]** and the Motion to Enter Order and Judgment **[Doc. 154]**. Further, the Court determines that Defendant Tinsley's contentions are without legal basis and frivolous and strikes the Final Notice for Dismissal Action. **[Doc. 155]**. *Hall v. Bellmon,* 935 F.2d 1106, 1108 (10th Cir.1991).

**IT IS ORDERED** that the Motion to Dismiss FRCP Rule 12(h)(3) **[Doc. 149]** and Motion to Enter Order and Judgment **[Doc. 154]** filed by Defendant Joshua Tinsley are **DENIED**.

**IT IS FURTHER ORDERED** that the Final Notice of Dismissal Action **[Doc. 155]** is **STRICKEN**.

/s/
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE